IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 23-cr-20237-SHM-1 |
| QUANTRESE BRAZZELL, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is United States Magistrate Judge Charmiane Claxton's June 11, 2024 Report and Recommendation, recommending that the Court deny Quantrese Brazzell's Motion to Suppress (the "Motion"). (ECF No. 51.) Defendant objected to the report on June 14, 2024, and the government responded on June 25, 2024. (ECF Nos. 53, 55.) For the reasons below, Defendant's objections are OVERRULED, the Magistrate Judge's report is ADOPTED, and Defendant's Motion to Suppress is DENIED.

I. **Factual Background**

On December 12, 2023, Defendant was indicted on one count of possessing fentanyl with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and one count of possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). (ECF No. 1.) On May 3, 2024, Defendant filed a Motion to Suppress evidence of a firearm and a bag of pills found in his car after a traffic stop,

to which the government responded on May 17. (ECF Nos. 40, 43.) The Magistrate Judge held a hearing on the Motion on June 10, at which she heard testimony from arresting Officers Booker Holloway and Amber Campos and reviewed both Officers' body camera footage and a recording of the 911 call preceding Defendant's arrest. (ECF No. 52.) The Magistrate Judge issued her proposed findings of fact and conclusions of law from the bench. (ECF Nos. 48, 50, 52.) Her findings of fact follow.

At 11:39 a.m. on December 31, 2022, Officers Holloway and Campos responded to a 911 call that there was a black Chrysler stopped at a traffic light and that the car was not moving when the light changed. (ECF No. 50 at 3-4.) The Officers arrived at the scene at 11:48 a.m. (Id. at 6.) Officer Campos approached the driver's side of the car and knocked on the window. (Id.) Defendant rolled down the window on Officer Campos's second knock. (Id.) Officer Holloway approached the car from the passenger side and asked Defendant if he were all right. (Id. at 4.) Officer Holloway asked Defendant to turn off the car two or three times and he eventually did so, but soon after he turned it back on and had to be instructed, again, to turn off the ignition. (Id. at 4-5.) Officer Holloway told Defendant that the Officers had to make sure he was okay and asked him to step out of the car. (Id. at 5.) As he was exiting the car, Defendant told the Officers

2

that his transmission and "shifter"[1] were broken and that he had been waiting at the light since five or six that morning for a tow truck to arrive.  (Id.)

At approximately 11:52 a.m., Officer Campos handcuffed Defendant and led him to the police car, while Officer Holloway approached Defendant's vehicle.  (Id.)  Officer Holloway opened the car door and then the armrest console and retrieved a plastic bag filled with other, smaller plastic bags containing pills. (Id.)  Officer Holloway said that the pills explained why Defendant was asleep in his car.  (Id.)

By 1:07 p.m., a DUI officer arrived at the scene and began conducting a field sobriety test.  (Id. at 7.)  The officer asked Defendant to recite the alphabet from A through R.  (Id.) Defendant began two or three times, getting part of the way there, before beginning again and ultimately stopping at Z instead of at R, as the officer had instructed him.  (Id.)  Defendant then began to count.  (Id.)

A 1:20 p.m., Officers Holloway and Campos began talking, and Officer Campos said that she smelled alcohol on Defendant when he stepped out of the car, adding that he "stumbled" when exiting. (Id.)  Officer Holloway asked why Officer Campos had let him know

---

[1] The body camera footage shows that Defendant used the word "shifter" but, presumably, meant his gear stick.  (ECF No. 52, Ex. 2 at 00:03:50 -- 00:03:55.)

3

earlier and said that he had noticed the smell of alcohol after Defendant had been moved to the back of the police car. (Id.) At 1:22 p.m., Officers Holloway and Campos began to discuss calling a tow truck. (Id. at 8.) At 1:24 p.m., Officer Campos began to draft the tow ticket, and at 1:25 p.m., Officer Holloway called his Lieutenant to discuss the stop and the towing. (Id.) At 1:54 p.m., Officer Campos informed Officer Holloway that Defendant had failed the horizontal gaze nystagmus test -- one of the field sobriety tests -- and Officer Campos believed that Defendant was intoxicated. (Id.) From 2:18 p.m. to 2:25 p.m., Officer Campos conducted an inventory of the car, making notes on a clipboard. (Id.) Officer Holloway reviewed the tow ticket at 2:26 p.m., and the car was subsequently towed. (Id.)

Officer Campos testified, in relevant part, to the following. It had taken "a while" for Defendant to roll down his windows and he was "disoriented and not immediately compliant" with the Officers' requests. (Id.) Officer Campos smelled alcohol on Defendant as he was exiting the car. (Id.) Defendant performed poorly on the horizontal gaze nystagmus test and, when the Officers ultimately took him back to the station and drew his blood, they found that he had a blood alcohol level of 0.085. (Id. at 10-11.) Officer Campos took inventory of the valuable items in the car and found an open bottle of liquor and a firearm, but did not find anything of value other than the contraband. (Id.)

4

Officer Holloway testified, in relevant part, to the following. Defendant did not seem "too coherent" during their interaction. (Id. at 13.) Defendant "looked confused" when asked to put his vehicle in park. (Id.) Officer Holloway had "serious concerns" about Defendant's ability to operate a car based on "the way that he was talking," and believed there was "something wrong," but did not know whether Defendant was intoxicated or having a medical crisis. (Id.) Officer Holloway did not initially notice that Defendant smelled of alcohol but, after the DUI officer had arrived and Officer Holloway had gone to retrieve Defendant from the police car, Officer Holloway was close enough to quickly tell that Defendant smelled of alcohol. (Id. at 14.)

The Magistrate Judge proposed the following conclusions of law. The Officers' initial interaction with Defendant was an investigative stop under Terry v. Ohio, 392 U.S. 1 (1968), which later ripened into an arrest. (Id. at 21.) Officer Holloway was justified in searching Defendant's car under the automobile exception to the Fourth Amendment's warrant requirement because, when Officer Holloway lifted Defendant's console and uncovered the bag of pills, Officer Holloway had probable cause to believe the car contained evidence of a crime. (Id. at 23-24.)

Alternately, suppressing evidence of the contraband found by Officer Holloway was not warranted because the evidence would inevitably have been found during a lawful inventory search. (Id.

5

at 26-27.) The Magistrate Judge opined that, after Defendant had failed the field sobriety tests, there was cause to arrest him, and because his vehicle was blocking traffic, the Officers had no choice but to tow his vehicle afterwards. (Id.) The Magistrate Judge concluded that the Officers followed relevant department policy for inventorying and towing vehicles. (Id.) Specifically, she rejected Defendant's argument that the Officers violated policy by failing to contact a supervisor before conducting the inventory. (Id. at 24-25.) The Magistrate Judge determined that the Memphis Police Department's Tow-In Policy required officers to contact a supervisor before calling a tow truck -- which the Officers did here -- but not, specifically, before taking an inventory. (Id.) The Magistrate Judge also noted that, although no tow ticket was entered into evidence documenting Officer Campos's inventory, the body camera footage clearly showed Officer Campos taking inventory and filling out a ticket. (Id.)

As a second alternative, the Magistrate Judge proposed that even if the evidence were unlawfully collected, exclusion would not be warranted. (Id. at 27.) She concluded that the Officers' behavior was not the sort of egregious conduct that requires deterrence by the enforcement of the exclusionary rule. (Id.)

Defendant has filed only one objection to the Magistrate Judge's factual findings. (ECF No. 53 at 1-2.) Defendant objects to the Magistrate Judge's finding that Officer Campos searched

6

Defendant's car and recorded her findings on a tow ticket, which was then reviewed by Officer Holloway. (Id. at 1.) Defendant argues that no tow ticket was produced in discovery, that the government reported that the tow ticket was lost, and that Officer Campos testified that she recorded the results of her inventory in the arrest ticket and incident report. (Id. at 1-2.) Defendant objects to all factual findings based on the tow ticket. (Id. at 1.)

Defendant has filed multiple objections to the Magistrate Judge's legal conclusions. First, Defendant objects to the Magistrate Judge's conclusion that the search was conducted pursuant to the automobile exception, arguing that the Officers did not have probable cause to search Defendant's vehicle for evidence of a crime. (ECF No. 53 at 2.) Second, Defendant objects to the Magistrate Judge's conclusion that the evidence against him would inevitably have been discovered during a lawful inventory search. (Id. at 3-4.) Third, Defendant objects to the Magistrate Judge's conclusion that the Officers' behavior was not sufficiently egregious to warrant application of the exclusionary rule. (Id. at 5.)

## II. Standard of Review

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. See United States v. Curtis, 237 F.3d

7

598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)). For dispositive matters, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1).

The district court is not required to review -- under a de novo or any other standard -- "any issue that is not the subject of an objection." Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. Id.; United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and, before entering private property like a car, police must generally obtain a valid warrant. United States v. Morgan, 71 F.4th 540, 543 (6th Cir. 2023.) There are several exceptions to the general requirement for a warrant. For example, when police lawfully take custody of a vehicle, they may search the car to take inventory of its contents, without first obtaining a warrant. United States v. Smith, 510 F.3d 641, 651 (6th Cir. 2007).

8

Evidence obtained in violation of the Fourth Amendment may be suppressed at trial under the exclusionary rule. Morgan, 71 F.4th at 547; Mapp v. Ohio, 367 U.S. 643, 654 (1961). If a court finds that police obtained evidence in violation of the Fourth Amendment, it may nonetheless decline to exclude that evidence if the government "can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." United States v. Keszthelyi, 308 F.3d 557, 574 (6th Cir. 2002) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)). The inevitable discovery doctrine is based on the idea that "police who carry out a search should be put in the same, but *no worse* position than they would have been absent any error or misconduct." United States v. Williams, 656 Fed. Appx. 751, 753 (6th Cir. 2016.)

The government can establish inevitable discovery by "showing that routine procedures that police would have used regardless of the illegal search would have resulted in the discovery of the disputed evidence." United States v. Ford, 184 F.3d 566, 577 (6th Cir. 1999); Keszthelyi, 308 F.3d at 574. Where the government seeks to establish inevitable discovery by arguing that evidence would have been discovered in a valid inventory search, it must prove: "(1) that the police had legitimate custody of the vehicle or other property being searched, so that an inventory search would have been justified; (2) that when the police in the police agency

9

in question conducted inventory searches, they did so pursuant to established or standardized procedures; and (3) that those inventory procedures would [inevitably have] led to the discovery of the challenged evidence." United States v. McCants, 677 F.Supp.3d 698, 714 (E.D. Mich. 2023); see also United States v. Kennedy, 61 F.3d 494, 498 (6th Cir. 1995). If police had standardized procedures, but "the defendant shows that the police were not in fact following those routine procedures in the particular case, the government's evidence about what police *would have done* must bow to contrary evidence about what they *actually did*." Ford, 184 F.3d at 577.

### III. Analysis

Because Defendant objects to the Magistrate Judge's conclusion that the contraband inevitably would have been discovered pursuant to a lawful inventory search, the Court will analyze the issue de novo. Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1).

**A. The Police Had Legitimate Custody of Defendant's Vehicle**

The police had legitimate custody of Defendant's vehicle such that an inventory search was justified following Defendant's lawful DUI arrest. The parties do not dispute the lawfulness of Defendant's arrest.[2] Without considering the bag of pills Officer

---

[2] At the suppression hearing, Defense Counsel, during closing arguments, said that, "if [the police] want to move [Defendant]

Holloway found in Defendant's car, the following undisputed facts established probable cause for Defendant's arrest: (1) Defendant's car was found idling at a traffic light, where it had been for five to six hours; (2) Officers Holloway and Campos testified that Defendant seemed confused and had difficulty following directions, and body camera footage shows Defendant struggling to comply with the request that he put his car in park; (3) Officer Campos testified that she smelled alcohol when Defendant rolled down his window, and body camera footage shows that she told Officer Holloway that after learning that Defendant had a prior DUI; (4) Officer Campos testified that Defendant's eyes were bloodshot; (5) Defendant exhibited confusion when a DUI officer asked him to recite the alphabet and had difficulty completing the task; and (6) Officer Campos determined that Defendant was intoxicated based on a horizontal gaze nystagmus test. (Id. at 65-69.) Defendant's

---

away from the car and do a field sobriety test because they have some suspicion that he might be intoxicated, okay, they can do that." (ECF No. 52 at 56.) Later, Defense Counsel said that, "once you fail a field sobriety test and once you have issues with that, okay, at some point in time you go from a suspicion to a reasonable suspicion or a probable cause." (Id. at 59.) Counsel also said that a "field sobriety test would confirm" whether or not the Officers had probable cause to search the vehicle and that, if the Officers "had gone over there and done the nystagmus test on him . . . okay, he's failed that, let's go look in the car, they can do that." (Id. at 60.) Taken together, these arguments establish that Defendant does not contest either the Officers' authority to subject him to field sobriety tests or to arrest him based on his failing those tests.

confusion and disorientation, including while reciting the alphabet during a field sobriety test; Officer Campos's testimony that he had bloodshot eyes and smelled of alcohol; the results of the nystagmus test; and the fact that Defendant's car had been idling at a traffic light for hours, collectively, established probable cause to arrest Defendant for DUI.  Brown v. Nabors, No. 3:09-cv-0927, 2011 WL 2443882 (M.D. Tenn. June 15, 2011) (finding that any reasonable juror would find probable cause to arrest individual based on erratic behavior, confusion in response to officers' instructions, and failure of field sobriety test).  Once arrested for a DUI, the department's Tow-In Policy authorized the Officers to have the vehicle towed.  (ECF No. 40-1 at 5.)

### B. The Memphis Police Department had Standardized Procedures for Inventory Searches of Vehicles

The Memphis Police Department's written Tow-In Policy established standardized procedures for towing someone's car after the person has been arrested for DUI.  (ECF No. 40-1 at 5-6.)  The parties do not dispute that the department's Policy was sufficiently "established [and] standardized" to permit valid inventory searches.  McCants, 677 F.Supp.3d at 714.

### C. The Police Conducted an Inventory Search According to Department Policy, Which Would Inevitably Have Led to the Discovery of the Challenged Evidence

12

Defendant argues that the Officers violated the Tow-In Policy in two ways.³ (ECF No. 53 at 4.) First, he argues that the Officers deviated from the Policy by failing to contact a supervisor before conducting the inventory search. (Id.) Second, he argues that the Officers failed to comply with the Tow-In Policy's requirement to prepare a tow ticket listing an inventory of the car's contents. (Id.)

Addressing Defendant's first argument, Defendant does not dispute the Magistrate Judge's findings -- based on her review of the body camera footage -- that Officer Campos began to draft the tow ticket at 1:24 p.m.; Officer Holloway called his supervisor to get permission for the towing at 1:25 p.m.; and Officer Campos

---

³ In his Motion to Suppress, Defendant argues that sections C and D of the Tow-In Policy dictate that, when an individual is arrested for DUI, officers must give him the option to leave the vehicle in place if it was legally parked; release the vehicle to a third party who can legally park the car; or send the vehicle to the City Impound Lot. (ECF No. 40 at 7; 40-1 at 5.) Defendant argues that the Officers violated that Policy by failing to inform Defendant of those options. (ECF No. 40 at 7.) The Magistrate Judge did not address this argument in her oral ruling, and Defendant does not raise this alleged violation in his objections. (ECF Nos. 50, 53.)
However, Defendant's car was not legally parked and had been stalled at a traffic light for five to six hours, while other vehicles were forced to drive around it. (ECF No. 52 at 65-66.) Defendant told the Officers that his car was stalled because of a broken transmission and gear shift. (Id. at 66.) Based on those statements, the Officers could not have released it to a third party. There was no third party on the scene who could legally park Defendant's vehicle, and nothing in the Policy provides that the Officers had an obligation to allow Defendant to contact someone to take care of his car. The Officers properly sent the vehicle to the City Impound Lot.

began her inventory search at 2:18 p.m. (ECF No. 50 at 8.) Because a supervisor was contacted before Officer Campos searched Defendant's vehicle, the Court finds that the Officers complied with this portion of the Tow-In Policy.

Defendant objects to the Magistrate Judge's conclusion that the Tow-In Policy requires officers to contact a supervisor before calling a tow truck, but not necessarily before taking an inventory. (ECF No. 53 at 4.) Defendant argues that such a policy would not make sense because there would be no reason for an officer to inventory a car until the officer had permission to tow it. (Id.) Defendant argues that officers must contact a supervisor before they are permitted to call a tow truck *and* before they begin to take their inventory. (Id.)

Defendant's arguments do not affect the Court's conclusion because Officer Holloway did contact a supervisor before Officer Campos began to inventory the contents of Defendant's car. Defendant argues that the Officers failed to contact their supervisor before Officer Holloway looked into Defendant's armrest console, but that does not affect the Court's conclusion. Whether Officer Holloway complied with relevant policy before looking into the console is not dispositive, because the Court finds that, even if his search were unlawful, the bag of pills would inevitably have been discovered during Officer Campos's lawful inventory search.

14

Addressing Defendant's second argument, the Magistrate Judge found that Officer Campos appropriately filled out a tow-in ticket, although it was not entered into evidence. The Magistrate Judge found that "[o]ne can see on the video that Officer Campos is completing the tow slip, but it for whatever reason didn't make it into evidence." (Id. at 25.) Defendant asserts that Officer Campos did not take a proper inventory, but simply recorded the contraband on the arrest ticket and in the incident report. (ECF Nos. 52 at 61-63; 53 at 1, 4.)

In Officer Campos's body camera footage, one can clearly see her begin to fill out a document labelled "MEMPHIS POLICE DEPARTMENT TOWED/RECOVERED VEHICLE REPORT" at approximately 1:24 p.m. (ECF No. 52, Ex. 2 (the "Campos Body Cam.") at 1:36:54.) Section VIII of the Tow-In Policy dictates that vehicles must be inventoried before being towed to protect the owner's property, protect the police from allegations of lost or stolen property, and protect the police from dangerous instrumentalities. (ECF No. 40-1 at 11.) An inventory should include all "area[s] of the vehicle to which an officer has access," including the trunk and glove compartment, if unlocked, and any unlocked containers. (Id.)

Officer Campos's inventory was not exhaustive. Officer Holloway told her that her inventory list did not have to be "very specific." (Campos Body Cam., 2:30:00 -- 2:30:06.) Officer Campos opened the glove compartment and the trunk but did not search parts

15

of the vehicle such as seat pockets. Although Defendant's trunk and back seat were cluttered with papers, bags, and open cardboard boxes, Officer Campos spent limited time searching the contents or moving them to see what they were. (Id. at 2:33:09 -- 2:37:31.) However, when the tow ticket is in view of the body camera, one can see that Officer Campos noted a packet of cigarettes in the center console. (Id. at 2:32:55 -- 2:33:00.) Later, one can see that she recorded the truck as containing "articles of clothing, cleaning supplies, toiletries . . . [and] bags." (Id. at 2:37:37.) The Court finds that Officer Campos's inventory was not so cursory as to warrant the conclusion that it was a mere pretext to conceal an earlier unlawful search.

The Court is not persuaded by Defendant's arguments that the Officers failed to comply with the Tow-In Policy's standardized requirements for an inventory search. Officer Campos appropriately filled out a tow ticket after Officer Holloway had contacted a supervisor. The government has shown, by a preponderance of the evidence, that the Officers had legitimate custody of Defendant's car after he had failed DUI tests; that the Officers inventoried the car in accordance with established police practice; and that, even assuming that Officer Holloway's initial discovery of the pills were based on the unlawful search of Defendant's console, the pills would inevitably have been uncovered during the subsequent lawful inventory search. McCants,

16

677 F.Supp.3d at 714. Having found that the suppression motion was appropriately denied on these grounds, the Court need not address Defendant's objections to the Magistrate Judge's alternate grounds for denial

## IV. Conclusion

Based on the foregoing reasoning, Defendant's objections to the Magistrate Judge's Report and Recommendation are OVERRULED, the Report is ADOPTED, and the Motion to Suppress is DENIED.

SO ORDERED this 1st day of July, 2024.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

17